# DOMBKOWSKI *v.* STATE OF INDIANA.

[No. 30,695. Filed November 6, 1967.]

*David F. Feagler,* and *Stevens and Wampler,* of Plymouth, for appellant.

*John J. Dillon,* Attorney General, and *Kenneth M. Waterman,* Deputy General, for appellee.

LEWIS, J.—This appeal is prosecuted from a conviction and judgment rendered on the verdict of a jury where the appellant was charged with the crime of Sodomy pursuant to Burns' Indiana Statutes, Anno., § 10-4221, (1956 Repl.). The appellant was sentenced to the Indiana Reformatory for an indeterminate period of not less than two (2) nor more than fourteen (14) years.

The appellant filed a motion for a new trial in the court below and urged the following grounds:

"1. The verdict of the jury is contrary to law.
"2. The verdict of the jury is not sustained by sufficient evidence.
"3. The Court erred in overruling the defendant's motion made at the close of all the evidence to instruct the

jury to return a verdict for the defendant and to find the defendant not guilty of the offense charged in the affidavit."

The fourth specification of the motion for a new trial reads as follows:

"(a) The Court erred in receiving in evidence, over the objection of the defendant, the testimony on direct examination of the witness Stanley Greenlee, a witness called on behalf of the State, the specific questions, answers, objections and the rulings of the Court being as follows:

'MR. CHIPMAN: Q. Are you elated to Leander Carter?

STANLEY GREENLEE: A. Brother-in-law.

MR. FEAGLER: To that we object. Mr. Carter is not a party to this action.

Court: Overruled.

STANLEY GREENLEE: A. He is in Indianapolis in a hospital.' "

"(b) The Court erred in receiving in evidence, over the objection of the defendant, the testimony on re-direct examination of the witness Rolland Kling, Jr., a witness called on behalf of the State, the specific questions, answers, objections and rulings of the Court being as follows:

'MR. CHIPMAN: Q. Where did it take place?

ROLLAND KLING, JR. A. About nine o'clock out in front cell.

MR. CHIPMAN: Q. Go ahead.

ROLLAND KLING, JR. A. The same time he smashed the whiskey bottle against the wall. He was telling me how he stabbed the Notre Dame student.

MR. FEAGLAR: I object.

Court: What did he say?

ROLLAND KLING, JR. A. Well, he was saying how—

Court: Just what did he say?

ROLLAND KLING, JR. A. He was saying how a big man he was; that he was the one that stabbed the Notre Dame student and the Notre Dame student was a big guy—

MR. FEAGLER: I object. It seems to me that this was elicited for the purpose of prejudicing the jury.

Court: Overruled. Answer stays in.' "

"(c) The Court erred in receiving in evidence, over the objection of the defendant, the testimony on redirect examination of the witness Rolland Kling, Jr., a witness called on behalf of the State, the specific questions, answers, objections and rulings of the Court being as follows:

'MR. CHIPMAN: Q. What was said?

ROLLAND KLING, JR. A. Is everything all right?

MR. FEAGLER: I will object. This is hearsay.

MR. CHIPMAN: He asked for it on cross-examination.

MR. FEAGLER: I think we clarified it. I think I asked him what he did. I did not ask what conversation took place.

Court: You got the conversation between Baker and this witness.

MR. CHIPMAN: He asked the question as to what he and Baker said.

Court: Overruled.

MR. CHIPMAN: Q. What was said?

ROLLAND KLING, JR. A. Deputy Sheriff Baker said, "Is everything all right, Ronald" and I was laying on the bed and I said "yes.' "

"(d) The Court erred in receiving in evidence over the objection of the defendant, the testimony on direct examination of the witness Donald Eugene Styles, a witness called on behalf of the State, the specific questions, answers, objections and rulings of the Court being as follows:

'MR. CHIPMAN: O. Did you hear any conversation between the defendant and the blond?

DONALD EUGENE STYLES: A. No.

MR. CHIPMAN: Q. You didn't hear any conversation at that time between the defendant and the blond, is that correct?

DONALD EUGENE STYLES: A. Certain phrases I heard.

MR. CHIPMAN: Q. What did you hear?

MR. FEAGLER: Again I object. No foundation is laid. He hasn't established that he recognized the voice, where he was and when he could see this witness.

Court: How close were you to the defendant and the blond?

DONALD EUGENE STYLES: A. Sitting in the bunk just inside.

Court: How close were you?

DONALD EUGENE STYLES: A. About from here to there.

Court: Could you hear?

DONALD EUGENE STYLES: A. If I were listening.

Court: Were you listening?

DONALD EUGENE STYLES: A. No, I could hear certain phrases.

MR. CHIPMAN: Q. What did you hear between the blond and Craig Dombkowski?

DONALD EUGENE STYLES: A. I heard him telling her how he was going to get "Red." Kling was wearing a red shirt at the time.

MR. CHIPMAN: Q. Just tell the Court and jury what he said and what she said.

MR. FEAGLER: He has already testified to what he said.

Court: He hasn't said anything yet. Just gave his conclusion.

MR. CHIPMAN: Q. That's right. I want to know what he said, not his conclusion. What was the question?

DONALD EUGENE STYLES: A. What did I hear him say.' "

"(f) The Court erred in overruling the objections of the defendant to the questions set forth next below, propounded by the Prosecuting Attorney during the cross-examination of the defendant Craig Dombkowski, and in admitting into evidence the answers thereto, the specific questions, answers, objections and rulings of the Court being as follows:

'MR. CHIPMAN: Q. Do you remember any offense you committed that you have not told the Jury about?

MR. FEAGLER: I object. It is a leading question. He asked for the offense he omitted.

Court: Overruled. You chose to put this defendant on the stand and now he is no different than any other person.

CRAIG DOMBKOWSKI: A. Not that I can remember.

MR. CHIPMAN: Q. What was the felony you were attempting to commit.

CRAIG DOMBKOWSKI: A. To-wit, Murder.

MR. CHIPMAN: Q. Who was the victim?

MR. FEAGLER: I object. This is going too far. It seems to me it is proper to talk about convictions but it is not right to go into each crime.

Court: Credibility of the witness.

MR. FEAGLER: We have established he has a long record.

Court: You put him on. Now he is digging further. He couldn't do anything if he hadn't taken the witness stand but you put him on; but he is the same as any other witness.

CRAIG DOMBKOWSKI: A. John Meyer.

MR. CHIPMAN: Q. Do you mean to tell the jury you don't know what the battery was and what you were convicted of?

MR. FEAGLER: The witness has already said what he was charged with. The witness has said he doesn't feel that he committed the assault and battery.

Court: But the Jury said he did.

MR. FEAGLER: But I don't think the prosecutor should put the words in his mouth.

Court: This is cross-examination. Overruled.

CRAIG DOMBKOWSKI: A. The battery was a stabbing, a knife wound, that I was supposed to have inflicted and I don't believe that I did. And I was convicted of just assault and battery with no intent to commit bodily harm on anyone.

MR. CHIPMAN: Q. Isn't it a matter of fact that it was brought out during that trial by cross-examination or by your statements that you had poured in so much liquor that you could hardly see?

CRAIG DOMBKOWSKI: A. Nobody poured anything in me.

MR. CHIPMAN: Q. Didn't you pour it down?

CRAIG DOMBKOWSKI: A. Nobody poured it to me. I started to drink it.

MR. CHIPMAN: The record will show that each time he has liquor—

MR. FEAGLER: I understand you can go into convictions but it seems to me that you cannot go into testimony in another matter.

Court: This is the credibility of his evidence.

MR. FEAGLER: This opens up the whole thing.

Court: Everything from fourteen years old when you put him on.

MR. CHIPMAN: Q. You said nobody poured it into you?

CRAIG DOMBKOWSKI: A. No, Sir.' "

Specifications (e) and (g) have not been dealt with in this opinion for the reason that they were not included in the argument section of appellant's brief, and, therefore, are deemed waived under Supreme Court Rule 2-17, 1964. Said alleged errors are not set out herein.

Specification 4(a) contends that the Court committed error in the rulings on the direct examination of witness Stanley Greenlee, which evidence, together with the objections, is set out *supra*.

Specification 4(b) urges reversible error by the Trial Court in receiving into evidence the testimony on re-direct examination of the witness Rolland Kling, Jr., as to statements made by the appellant with regard to an alleged stabbing, as set out *supra*.

Specification 4(c) argues that the Trial Court committed reversible error in receiving into evidence the testimony on re-direct examination of the witness Rolland Kling, Jr., as to certain statements made to him by a deputy sheriff, all as set out verbatim, *supra*.

Specification 4(d) urges reversible error by the Trial Court in that the Court interrogated a witness as to certain testimony regarding a conversation as set out verbatim, *supra*.

Specification 4(e) alleges reversible error in the Trial Court in permitting the prosecuting attorney on cross-examination to exceed the scope of direct examination and to exceed proper cross-examination concerning prior convictions of ap-

pellant and other charges made against appellant as set out verbatim, *supra.*

Errors 4(a) and 4(c) contend that certain testimony was introduced over objection. It is true that objections were made; however, in each instance, objections were not made at the proper time and with the proper specificity. In assigned errors (b) and (c), the objection was made, in each instance, after the answer was given. *Bramlett* v. *State* (1949), 227 Ind. 662, 87 N. E. 2d 880 holds that a party must make his objection before the answer is given in order to preserve the error for appeal. See also, 1 Ewbank's Indiana Criminal Law, *Evidence,* § 379, p. 232. "Objections to the admission of evidence must be made before answers are given." Citing as authority the following: *Parker* v. *State* (1925), 196 Ind. 534, 149 N. E. 59; *Kempa* v. *State* (1945), 223 Ind. 120, 58 N. E. 2d 934.

The appellant has also failed to show any reason where appellant's rights were prejudiced under assigned errors 4(a) and 4(c).

". . . Where such evidence does not prejudice the rights of the accused, and is harmless, the judgment will not be reversed because of its admission." *Dillon* v. *State* (1923), 194 Ind. 600, 142 N. E. 643, quoting with authority from *Turbeville* v. *The State* (1873), 42 Ind. 490.

We conclude, therefore, that there is not reversible error in assigned errors 4(a), 4(b) and 4(c).

In assigned error 4(d) appellant contends that the Trial Court committed error when the Court interrogated witness Styles as to a certain conversation which the witness overheard between the appellant and his "girl friend." Counsel for the appellant had objected to this testimony because the prosecuting attorney had failed to lay a sufficient foundation. The Trial Court intervened by interrogating the witness and establishing the required foundation.

" 'It is true, a trial court in any case may, within reasonable limits, interrogate a witness if done in a manner that will not improperly influence the jury.' *Rhodes* v. *State* ██ (1930), 202 Ind. 159, 172 N. E. 176. A fair-minded judge observing the incompetency of an attorney for the defense would be expected to take more than ordinary care to protect the rights of the accused." *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848.

"The purpose of this discretionary power is to allow the trial judge to step in and aid (a) the jury, or (b) the court (in a trial without a jury), in their fact-finding responsibilities; however, he is to do this in an impartial manner and not to improperly influence the jury with his own contentions." *Thomas* v. *State* (1967), 248 Ind. 447, 230 N. E. 2d 303.

It is not error *per se,* therefore, for a Trial Judge to interrogate a witness. Therefore, since it has not been shown how the defendant was harmed nor how the Trial Judge ██ abused his discretion, this conduct will not constitute error.

Assigned error 4(f) concerns questions propounded by the prosecuting attorney during the cross-examination of the appellant. It is the contention of appellant that the ██ prosecuting attorney was permitted too much latitude on cross-examination of Dombkowski. We do not, here, pass upon whether or not the prosecuting attorney was overzealous and did exceed the scope of proper examination. Suffice it to say that appellant did not make prompt objection to the questioning; nor did appellant seek any other remedy such as a corrective instruction to the jury or a motion for mistrial. *Bramlett* v. *State, supra.*

". . . A party may not sit idly by and make no objections to matters he might consider prejudicial, awaiting the outcome of a trial, and thereafter raise such question for the first time." *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523, quoting with authority from *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Kern* v. *Bridwell* (1889), 119 Ind. 226, 21 N. E. 664.

". . . We cannot permit litigants to gamble on the possibility of a favorable verdict, . . ." *Gamble* v. *Lewis, supra.*

Appellant has failed to save his alleged error properly.

Under appellant's assignment of error that the verdict is contrary to law, appellant contends that error was committed by the Trial Court in permitting the jury to view the scene of the alleged offense without the affirmative approval of appellant. Appellant made no objection at the trial level to the viewing of the scene of the alleged offense; however, since the affirmative approval of the appellant is not shown, we believe the fatal error on appeal is a violation of Rule 2-6 of the Supreme Court in that appellant failed to place this specification in his motion for a new trial.

> ". . . It is well settled that on appeal this Court will not review an alleged error which has not been called to the attention of the trial court first with a specific designation of the ground of objection. . . . *Prough* v. *State* (1957), 236 Ind. 655, 142 N. E. 2d 603.

Notwithstanding this defect, we move to a more specific case: *Brown* v. *State* (1964), 245 Ind. 604, 201 N. E. 2d 281. Error was assigned where the Trial Judge failed to admonish the jury concerning conduct during a recess before discharging them. In deciding that this was not prejudicial, *per se,* this Court stated:

> ". . . Failure to make timely objection generally waives the right to object to irregularities affecting the jury. 8 West's Indiana Law Encyclopedia, *Criminal Law,* Ch. 25, § 508, p. 562."

> "However, even if the statute is mandatory, as urged by appellant, he does not show how he was harmed by the failure of the Court. . . ."

The general rule is embraced in 9 West's Indiana Law Encyclopedia, *Criminal Law,* Ch. 30, § 751, p. 242, as follows:

> "A conviction will not be reversed for an error or a defect which does not prejudice the substantial rights of the defendant, where the record clearly discloses that the defendant had a fair and impartial trial. . . ."

We conclude that since appellant made no objection at trial, did not raise this issue in his motion for a new trial, and has not shown how he was prejudiced, he has not properly presented this alleged error on appeal.

Appellant next cites as error, deprivation of counsel. The alleged crime was committed on January 20, 1964, the affidavit was issued on January 23, 1964, and the appellant was arraigned on January 24, 1964. These proceedings were all completed without the appellant having the benefit of counsel. Appellant did not request counsel at this time; however, he was represented by counsel at the trial. This objection was not raised at trial or in the motion for a new trial.

In *Capps* v. *State* (1961), 242 Ind. 165, 177 N. E. 2d 457, appellant raised on appeal for the first time an alleged error that since he was tried jointly with another defendant he had a right to individual counsel and that he was not advised of his Constitutional Rights. This Court stated: ". . . The appellant appears to have raised the question urged for the first time on appeal in this Court. Such questions could very well have been presented and raised in the trial court at the time the claimed errors occurred." Citing with authority from *Prough* v. *State, supra; Pivak* v. *State* (1931), 202 Ind. 417, 175 N. E. 278; 74 A. L. R. 406; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185.

Since appellant has not objected at trial nor raised this in his motion for new trial, he may not raise it now.

It is also alleged by appellant that the Trial Judge was biased and interfered with the proceedings during the trial, thereby prejudicing the defendant, but these alleged errors were not even alluded to in appellant's motion for a new trial and they may not now be considered as error. Supreme Court Rule 2-6 (1964).

The last assigned error raised is the insufficiency of the evidence to support the conviction. Appellant points to the

fact that the evidence was comprised chiefly of the victim's testimony and other supporting testimony which of itself would not be sufficient.

On appeal from a criminal conviction where the sufficiency of the evidence is challenged, the Supreme Court cannot weigh the evidence but will consider only the evidence most favorable to the state, and the reasonable inferences that may be drawn therefrom, to determine whether the jury was warranted in returning a verdict of guilty. *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N. E. 2d 677.

The victim's testimony was full and complete in every detail. Appellant's sufficiency of the evidence argument is in reality one which attacks the credibility of the witness.

"In Wedmore v. State (1957), 237 Ind. 212, 143 N. E. 2d 649, a conviction for rape was affirmed solely on the testimony of the prosecuting witness, this Court saying:

'It is not within the power of this court to determine the credibility of a witness or to say when a witness is telling the truth. Yesson v. State (1955), 234 Ind. 311, 126 N. E. 2d 760. It is apparent from the verdict that the jury believed the prosecuting witness' testimony given at the trial —this they had a right to do . . .' The weight of the evidence, the credibility of the witness, and the ultimate guilt or innocence of the accused present a question for the determination of the trial jury. Ritter v. State (1946), 224 Ind. 426, 67 N. E. 2d 530." *Montgomery* v. *State* (1967), 249 Ind. 98, 229 N. E. 2d 466.

It is manifest that if the jury believed the witness-victim and were warranted in doing so, we may not reverse this case and usurp their prerogatives.

The complete record indicates to us that a number of times in this trial, the prosecuting attorney may have been over-enthusiastic and overzealous for a conviction. We are also impressed from the record as a whole that the Trial Court may have been over-anxious to conclude the trial and may have taken more part in the trial than would be recommended in a treatise on modern trial practice.

The appellant's trial attorney probably did not make as many objections as some attorneys might suggest in viewing the record by hindsight; however, the enthusiasm and devotion to duty of the appellant's trial counsel cannot be questioned. His trial strategy should not be judged in hindsight. He worked with a very difficult set of facts before a jury, and only that attorney could properly evaluate the jury and its reactions, and only he could guide the destiny of appellant's defense. This case is replete with many borderline questions, but after a careful review of all questions, properly assigned, and even those that were inadequately assigned, we hold that there is a complete absence of showing that appellant's rights were prejudiced in any manner.

The judgment of the Trial Court is, therefore, affirmed.

Hunter C. J., and Arterburn and Mote, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 230 N. E. 2d 602.