210

Raymond J. COMPTON, Regional Director of the Twenty-Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

LOCAL 346, INTERNATIONAL LEATHER GOODS UNION, AFL–CIO; and International Leather Goods, Plastics & Novelty Workers Union, AFL–CIO, Respondents.

Civ. No. 100–60.

United States District Court
D. Puerto Rico,
San Juan Division.

May 31, 1960.

Marvin Roth, Washington, D. C., and Margaret L. Passig, Santurce, P. R., for petitioner.

Max Frankle, New York City, Hipolito Marcano, San Juan, P. R., for respondents.

Hartzell, Fernandez & Novas, San Juan, P. R., for intervenor.

RUIZ-NAZARIO, District Judge.

At the termination of the hearing in this action on May 19, 1960, I made certain statements from the bench which

now, after a more thoughtful consideration of the law, the pleadings, the evidence adduced at said hearing, the briefs and memoranda of counsel and the applicable decisions on the subject, I find not to be the correct approach to the questions at issue.

■ Although the evidence produced establishes that the original or initial object of the picketing at the factories of Baronet and Esco Corporations was the lay-off of approximately 40 workers of said factories, it amply supports, also, the conclusion that respondents, through their agents joined and strongly participated in said picketing, almost from the beginning, and that organizational and recognitional activities of the respondents were and have been also, since then, objects of the said picketing.

As shown by the evidence (Exh. 1 Pet.) respondent International revealed that its purpose from April 21, 1960, was and has been since that date, the organization of all Baronet plants, including those in Puerto Rico, by establishing a permanent office in San Juan, by sending its "Organizing Staff" to this Commonwealth and concentrating its efforts on Baronet's plants in Vega Baja and Morovis and assigning its Organizer Carlton Steger to assist and coordinate its campaign to "Unionize the Baronet empire". It further intended to "negotiate decent contracts for all three plants in Reading (Pa.), Vega Baja (P.R.) and Morovis (P.R.) so that all workers are protected, etc.".

Respondents' representatives and agents have actively participated and been present since then in the picketing. Picket signs reading "International Leather Goods Union (AFL-CIO) Backs this Strike" have been prominently displayed at all times in the picket lines. Other signs reading "We demand recognition of the Union" were prominently displayed in the picket lines since April 26 and through April 29, 1960. (See Exhibits 4c, 4r, 5c, 5h, 5k Pet.). A leaflet (Exhibit 2 Pet.) was distributed at the strike front informing that Senator Marcano, the President of the AFL-CIO in Puerto Rico, would address the workers of both factories at the strike front on May 4, 1960 to explain to the workers of both factories "what the Union means and the rights granted by the Federal and Commonwealth laws to workers on strike." In this leaflet, bearing the signature of Carlton Steger and Eulalio Marcano, as organizers of respondent International, it was further stated "We are winning the strike. No fellow worker should entertain any fear in this great struggle for the good of everyone. Not only our union but also all the organized labor movement of the AFL-CIO in Puerto Rico backs you up one hundred per cent."

See also Exhs. 6 and 7 Petitioner, which clearly represent organizational propaganda distributed by the defendants at the strike front.

The evidence also supports the charge that the picketing was conducted by violent means: the entrances to the plants have been blockaded by large number of pickets stationed there, the picketers have recurred to threats, acts of physical violence and other intimidating and coercive acts against the employees of Baronet and Esco and against the employees of other persons who have been regularly doing business with them.

As of the date on which the last memorandum on the questions at issue was submitted to the court, more than 30 days, from the commencement of the picketing have elapsed, and it has not been shown that respondents have filed with the board any petition for recognition under Sec. 9(c) of the Act.

■ All that is required under Sec. 8 (b) (7) (C) of the Act is that "an object", and not the initial or original object nor the sole object, of the picketing, shall consist of "forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees" (recognitional picketing) "or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative",

(organizational picketing) unless such labor organization is currently certified as the representative of such employees: * * * "where such picketing has been conducted without a petition under section 9(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing", etc. (Emphasis supplied.)

■ The exception contained in subparagraph (C) applies only to picketing in contemplation of the filing with the board of a petition under Section 9(c) of the Act, if such filing is actually made within a *reasonable period of time* not to exceed thirty days from the commencement of such picketing.

■ What is a reasonable period of time for such filing is something which depends on the facts and circumstances of each particular case.

■ No doubt Congress, in employing the term "reasonable" in said sub-paragraph, had in mind a peaceful picketing accompanied by an actual intention to file the Sec. 9(c) petition and diligent efforts to file it as promptly as possible.

But it could not have been the intention of Congress to permit mass picketing accompanied by threats, acts of physical violence and other unlawful conduct, devoid of all intent to file a Sec. 9(c) petition, absent an honest showing of any efforts to so file or a lawful excuse for the delay, to last unrestrained for the maximum period of 30 days.

In Cuneo on Behalf of N. L. R. B. v. United Shoe Workers of America, etc., D.C.N.J.1960, 181 F.Supp. 324, 326, this particular question came up for decision under a factual situation very similar to that involved here and the court held as follows:

"The unlawfully aggressive nature of the picketing and its coercive effect on the employees have combined in the instant case to shorten the period for which the Union may reasonably be allowed to picket before seeking the impartial intervention of the Board."

There, only ten days had elapsed since the commencement of the picketing. Here, although the same period of time had elapsed by the date the petition was filed in this court, but due to respondents' request the hearing thereon was delayed until May 19, 1960, 13 more days transpired, without any showing that the respondents had filed any Sec. 9(c) petition with the board. Moreover, by the time the last memorandum of counsel was filed more than 30 days from the commencement of the picketing had elapsed, and no showing has been made by the respondents of their filing of any such petition with the board. Thus the maximum period of 30 days provided in sub-paragraph (c) has already expired on the date this memorandum is being written.

■ All that the court has to decide in a proceeding like this, brought under Sec. 10(*l*) of the Act, is whether petitioner has reasonable cause to believe that the charge of unfair labor practices under Sec. 8(b) (7) (C) of the act filed with the Board, against the respondents, by Baronet of Puerto Rico Inc. and Esco Corp. on April 29, 1960, is true and that a complaint thereon should issue.

■■ The evidence produced at the hearing of this proceeding amply supports petitioner's said belief and the injunctive relief prayed for should be granted.