Waymon D. DENTON, Russell C. Musgrove, Thomas G. Fetterhoff, Louis E. Mathes, Appellants-Defendants,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2–378A76.

Court of Appeals of Indiana, Second District.

Oct. 18, 1979.

Don G. Blackmond, South Bend, for appellants-defendants.

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SULLIVAN, Judge.

In September of 1977, defendants Denton, Musgrove, Fetterhoff, and Mathes were convicted of operating vehicles which exceeded the weight limitations set out in I.C. 9–8–1–12 (Burns Code Ed. 1973). Subsequently, they were sentenced pursuant to I.C. 9–8–1–13 (Burns Code Ed. 1973). The four cases were consolidated for the purposes of appeal and involve two issues:

1. whether I.C. 9–8–1–13 provides for excessive fines contrary to article 1, section 16 of the Indiana Constitution and,

2. whether a sufficient foundation was established for the admission of evidence as to the aggregated axle weights of the vehicles.

We affirm.

### I.

Defendants argue that the penalty provision of I.C. 9–8–1–13 is unconstitutional. The pertinent part of the statute reads:

"[O]n conviction each such person . . shall be fined as follows:

. . . . .

(6) If the total of all excesses of weight under one or more of the limitations of IC 1971, 9–8–1–12 is 5,000 pounds or more, ten cents [10¢] a pound for each pound over 1,000 pounds of excess weight.

. . . . .

. . . Parties fined by the court must pay the fine within thirty [30] days." I.C. 9–8–1–13(6) (Burns Code Ed. 1973).

The defendants urge that when the penalty provision is read in conjunction with I.C. 35–4.1–4–16 (Burns Code Ed. 1975) an excessive fine results.[1] The latter statute provides that if a convicted person is not indigent but refuses or fails to pay his fine, the court may incarcerate that person and credit his prison time toward the payment of the fine at a rate of five dollars per day.

The defendants do not clearly demonstrate standing to raise this issue. The record is devoid of any evidence that the defendants intend to refuse to pay their fines. Nonetheless, we feel the issue is significant and merits consideration.

■ Defendants contend that in order to pay off their fines, the required imprisonment would range from 51 to 509 days. Such extended incarceration, they argue, clearly demonstrates the excessive nature of the penalty. The constitutional prohibition against cruel and unusual punishment proscribes atrocious obsolete punishments and is aimed at the kind and form of punishment rather than the duration and amount. *Hollars v. State* (1972) 259 Ind. 229, 286 N.E.2d 166; *Clifton v. State* (1st Dist. 1978) Ind.App., 375 N.E.2d 1126. We do not find the punishment to be so grossly excessive as to render it unconstitutional.

■ As additional support for their argument, defendants compare the instant offense to that of driving while intoxicated which calls for a maximum fine of $500 and imprisonment of up to six months. Defendants' argument is cogent and appealing but does not comport with the applicable case

1. Repealed by Acts 1977, P.L. 340, § 148.

law. The comparative offense rationale was rejected in *Rector v. State* (1976) 264 Ind. 78, 339 N.E.2d 551. There the court held that the legislature is free to establish penalties that are not proportionate to one another so long as the crimes are not lesser included offenses. Certainly, lesser included offenses are not at issue here. Hence, the disparity between them is not prohibited by article 1, section 16 of the Indiana Constitution.

The problem of imprisonment to satisfy fines was addressed in *Williams v. Illinois* (1970) 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586. There the United States Supreme Court held that a pauper's prison sentence, imposed to discharge a fine, which exceeded the maximum punishment for the crime, violated equal protection. Our state Attorney General discussed the application of the *Williams* case to Indiana. He explained:

> "It should be pointed out quite emphatically however, what the case of *Williams v. State* does *not* hold.
>
> This case does *not* affect the State's right to do the following:
>
> 1. Imprisonment for *willful* refusal to pay the fine or court costs, as distinguished from pauperism, which prevents one from paying such fine or court costs." (1970 O.A.G. 46.)

We find I.C. 9-8-1-13 not unconstitutional.

## II.

■ Next, the defendants urge that evidence about the vehicles' weights was admitted without proper foundation. The weights were obtained by the use of portable scales (also known as loadometers).

The weighing was done by Patrolman Heimann who testified that he was assigned to the motor carrier division of the Indiana State Police and was trained in the use of the scales. Furthermore, I.C. 9-8-1-17 (Burns Code Ed. Supp.1975) specifically authorizes policemen to stop, measure and weigh vehicles. The first requirement was adequately satisfied.

As to the equipment itself, the record is replete with expert testimony about the inspection and certification of the portable scales used by Officer Heimann. Metrologist Jeffers stated that he checked and certified the scales for accuracy March 21, 1977. The arrests occurred April 4, 1977. The testing was corroborated by two other witnesses: Paul Seitz and Ralph Finney. There was, then, sufficient evidence regarding the precision of the equipment.

Finally, a proper foundation must establish that the operator used approved techniques. The crux of defendants' argument is that there was no evidence that the portable scale method is an accepted procedure or an accurate way of obtaining gross weight. Defendants point out that the portable scales showed a disparity of weight from one side of each trunk to the other. This fact alone, they contend, shows the absurdity of such a weighing technique. The problem of accurate weighing of large vehicles is undeniably complex and involves many intricate principles of physics. At least one other jurisdiction has confronted and approved the use of portable scales:

> "The officer described, in explicit detail, the weighing procedure which was followed in this case, and there is nothing in the record to suggest that the procedure was incorrect. While counsel urged that such an inference can be drawn because the total axle weight of one side of the vehicle was 2,000 pounds in excess of the other side, the side-to-side weight differential is readily attributable to the liquid cargo shifting because of a slight beveling of the road surface, where the weighing took place. Certainly the differential obtained does not give rise to a reasonable inference that the scales were incorrect or that the weighing procedure was improper. Loadometers are in widespread use by law enforcement agencies throughout the country, and they are a relatively simple but accurate means of determining vehicle or axle weights without seriously delaying commercial traffic. Loadometer readings have been accepted as satisfactory evidence in other jurisdictions to support convictions for vehicle weight violations (see, e. g., *People v.*

*Vinciguerra,* 24 Misc.2d 63, 203 N.Y.S.2d 953 (Sup.Ct.1960)) . . ..'' *State v. Horn* (1971) 117 N.J.Super. 72, 283 A.2d 561, *modified on other grounds,* 120 N.J. Super. 203, 293 A.2d 676 (1972).

Additional support for the use of portable scales comes from the Indiana statute itself. I.C. 9–8–1–17 entitled "Size and Weight," section 17 deals with enforcement of the rules governing truck weight. It begins:

"Any peace officer having reason to believe that any vehicle herein described or the load thereon is unlawful is authorized to stop, measure and weigh the same on any public highway by means of *portable or* stationary scales . . .." (Emphasis added.)

However, defendants challenge the use of portable scales because it is directly contrary to the mandate of Indiana Rules and Regulations (24–6–3–2)–1, (24–6–3–2)–2, and (24–6–3–13)–1(e).[2] Interpretation of these regulations must begin with a close reading of I.C. 24–6–3–2 (Burns Code Ed. 1974), enacted in 1925 and entitled "Inspectors," which is the enabling statute for the aforementioned regulations. Even a cursory reading of the sections of chapter 3 reveals that the chapter was intended to deal with the weighing of commodities. For example, section 2 states: "The state *food and drug* commissioner shall be the state commissioner of weights and measures." (Emphasis added.) In addition, the title of Acts 1925, chapter 86 reads:

"An act concerning scales, weights, measures, balances and weighing devices and prescribing the standards therefor, prescribing the rights, powers and duties of the state commissioner of weights and measures, providing for the appointment, qualifications, removal, compensation and duties of county and city inspectors of weights and measures, providing how certain commodities shall be sold, providing for the appointment of weighmasters, prohibiting the sale or offering for sale or articles below standard weight or measure and providing penalties for the violation thereof."

Furthermore, section 13, which defines the appointment and duties of weighmasters, again focuses on commodities. In pertinent part it reads: "Any weighmaster who misrepresents the quantity of commodities weighed or measured by him, or otherwise misconducts himself in the execution of his duties of weighmaster shall be guilty of a misdemeanor . . .."

Earlier this year, the Third District similarly concluded that the thrust of the statutory weights and measures provisions are directed principally to trade and consumer laws. *Widner v. State* (3d Dist. 1979) Ind. App., 391 N.E.2d 1199.

■ Even if one were to disregard the legislative intent of I.C. 24–6–3–2, any apparent conflicts between I.C. 24–6–3–2 and I.C. 9–8–1–17 are resolved by applying settled rules of statutory construction. First, if one statute addresses a subject in general terms and another addresses the subject

---

**2.** (24–6–3–2)–1: "Approval of vehicle scales—Requirements.—Official approval of a vehicle scale extends exclusively to the use of that scale in weighing loads whose entire wheelbase can be accommodated on the scale platform at one time."

(24–6–3–2)–2: "Weighing of vehicles—Restrictions.—All weighing of vehicles shall be made with no person in or on the vehicle or on the scale platform."

(24–6–3–13)–1(e): "No certificate of weight shall be issued by a State weighmaster under any one or more of the following conditions:

I. When the scale at his disposal has not been officially approved by the director of the State Division of Weights and Measures or one of his assistants, deputies or inspectors at the last previous official examination within a period of 12 months preceding the date of weighing.

II. When the total length of the wheelbase of the vehicle to be weighed exceeds the length of the platform of the scale at the weighmaster's disposal.

III. When the weight of the gross load exceeds the nominal weight capacity of the scale at the weighmaster's disposal.

IV. When a vehicle is to be weighed, either empty or loaded, and any person is in or on the vehicle or on the scale platform at the time of weighing.

V. When the loaded or unloaded vehicle weighs less than 1,000 pounds and the scale at the weighmaster's disposal is a vehicle scale."

more specifically, the specific statutes should control. *Indiana Waste Systems, Inc. v. Board of Commissioners of County of Howard* (2d Dist. 1979) Ind.App., 389 N.E.2d 52. Here, the general statute deals with weights and measures while the more specific statute governs the weighing of trucks. Secondly, the latter of two statutes pertaining to the same subject area prevails when there is conflict. *Id.* The motor vehicle provisions were enacted in 1931 and thus prevail over any contradictory provisions of the weights and measures legislation created in 1925.

While the defendants impugn the portable scale technique, they have presented no evidence or argument to support their misgivings. We believe it incumbent upon them to present some data or authority if they wish to curb such an established technique. Accordingly, we hold that the trial court committed no error in allowing testimony as to the aggregate weights obtained by the portable scales.

Judgment affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.